UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00566-FDW

| | | |
|---|---|---|
| VICTOR OLANDUS MOULTRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ERIK A. HOOKS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Petitioner Victor Olandus Moultry's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and Motion for Evidentiary Hearing (Doc. No. 9). Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 5.)

### I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina who, on April 4, 2014, was convicted by a Mecklenburg County jury of second-degree murder, misdemeanor hit and run, and possession of cocaine. State v. Moultry, 784 S.E.2d 572, 753 (N.C. Ct. App. 2016). The North Carolina Court of Appeals summarized the facts from trial as follows:

> On 16 February 2012, Officer Tim Wilson of the Charlotte Mecklenburg Police Department was speaking with Ms. Marian Carpenter, the victim of a hit and run accident, and two witnesses to that accident when he heard over his radio that there had been another accident he believed might be related to the first "due to the time" and proximity. When Officer Wilson arrived at the scene of the second accident he saw a Ford and an Impala with damage consistent with Ms. Carpenter's and the witnesses' descriptions of the hit and run. Defendant, the driver of the Impala, and the driver of the Ford truck were taken to the hospital. Cocaine was found in defendant's car and, upon testing at the hospital, in his blood. The driver of the Ford died from his injuries sustained in the collision.

1

Id. The trial court sentenced Petitioner to 207-261 months plus 120 days imprisonment. (Resp't's Supporting Br. 1, Doc. No. 6.) Petitioner appealed, and on April 5, 2016, the North Carolina Court of Appeals issued a published opinion finding no error. Moultry, 784 S.E.2d at 575. Petitioner did not seek discretionary review of the decision in the North Carolina Supreme Court. (§ 2255 Pet. 2, Doc. No. 1.)

Petitioner then unsuccessfully sought post-conviction review in the state courts.[1] He filed the instant federal habeas Petition on September 18, 2017 (§ 2254 Pet. 14), when he signed it under penalty of perjury and placed it in the prison mail system, see Houston v. Lack, 487 U.S. 266, 267 (1988). The Respondent has filed a Motion for Summary Judgment (Doc. No. 5), and Petitioner has responded to the Motion (Doc. No. 8).

## II. STANDARD OF REVIEW

---

[1] There is some disagreement about when Petitioner first sought post-conviction relief, but Petitioner alleges he filed his one, and only, motion for appropriate relief ("MAR") on January 9, 2017. (§ 2254 Pet. 3, Doc. No. 1; Pet'r's Resp. to Summ. J. Mot. 6, Doc. No. 8-1.) It was denied on January 13, 2017, and Petitioner's certiorari petition to the North Carolina Court of Appeals was denied on April 11, 2017. (State's Support. Br. 2, Doc. No. 6.)

The Antiterrorism and Effective Death Penalty Act of 1996 provides a statute of limitation for § 2254 petitions by a person in custody pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1). Generally, the petition must be filed within one year of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. § 2244(d)(1)(A). The North Carolina Court of Appeals issued its order denying Petitioner's direct appeal on April 5, 2016. Because Petitioner did not seek discretionary review of that order in the North Carolina Supreme Court, his judgment became final on or about May 10, 2016, when the time for seeking such review expired. See N.C. R. App. P. 15(b) ("A petition for review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."); Gonzalez v. Thaler, 132 S .Ct. 641, 656 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires.").

The statute of limitation then ran for 244 days, until January 9, 2017, when, according to Petitioner, he filed his MAR. The limitation period was tolled until April 11, 2017, when the North Carolina Court of Appeals denied his certiorari petition. See 28 U.S.C. § 2244(d)(2) (providing that the limitation period is tolled during the pendency of a properly filed state post-conviction action). The statute of limitation resumed and ran for another 121 days until it finally expired on or about August 10, 2017, more than a month before Petitioner filed the instant § 2254 Petition. According to Petitioner's timeline, then, his habeas Petition is untimely under § 2244(d)(1)(A). Respondent, however, does not raise the statute of limitations as a defense.

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### III. DISCUSSION

#### A. FOURTH AMENDMENT CLAIM AND RELATED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

**1. Fourth Amendment Claim**

In his first ground for relief, Petitioner claims he was subjected to an illegal search and seizure when his blood was drawn at the request of law enforcement while he was unconscious at the hospital. The blood was tested, and the results were positive for the presence of cocaine. The State introduced that evidence at trial. Moultry, 784 S.E.2d at 753. Petitioner alleges the requesting officer did not have a warrant for a blood sample, and that the blood evidence should therefore have been excluded at trial.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The exclusionary rule requires that evidence obtained in an illegal search or seizure be

3

excluded at trial and that a conviction be reversed on direct review if the conviction was based upon evidence obtained in an illegal search or seizure. See e.g. Mapp v. Ohio, 367 U.S. 643 (1961).

In Stone v. Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). Petitioner could have moved prior to trial to suppress the test results of the blood evidence on Fourth Amendment grounds and then appealed any adverse decision on direct review. In other words, he had the opportunity for full and fair litigation of his Fourth Amendment claim prior to trial and on direct appeal, but he did not take it. Thus, he may not obtain habeas relief on the grounds that evidence seized in a warrantless search was introduced against him at trial. See id. This claim is denied.

In his Response to the Motion for Summary Judgment, Petitioner claims for the first time on federal habeas review that law enforcement violated the Fourth Amendment when they searched his car after the accident. (Pet'r's Resp. to Summ. J. Mot. 7-8.) Petitioner has not moved to amend his § 2254 Petition to raise such a claim, and he may not use his response to the summary judgment motion as a substitute for that process. See Fed. R. Civ. P. 15. Therefore, the Court shall not consider Petitioner's new Fourth Amendment claim.

### 2. Ineffective Assistance of Counsel Claim

In his fourth ground for relief, Petitioner claims trial counsel was ineffective for failing to move to suppress the blood evidence on Fourth Amendment grounds. (§ 2254 Pet. 10.) Petitioner raised the substance of this claim in his January 9, 2017 MAR (MAR 9-10, § 2254 Ex., Doc. No. 1-1 at 19-20), and the trial court denied it on the merits (Jan. 13, 2017 Order Deny.

4

MAR, Resp't's Ex. 7, Doc. No. 6-8).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Petitioner does not claim that the trial court's rejection of this MAR claim was factually unreasonable. To obtain relief under § 2254(d)(1), then, Petitioner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To establish prejudice based upon counsel's failure to file a motion to suppress, a petitioner must prove that the "Fourth Amendment claim is

5

meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel[,] . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are " 'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'" Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139). Therefore, to obtain relief on this claim, Petitioner must demonstrate the trial court's determination that he was not prejudiced by counsel's failure to file a motion to suppress "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

Supreme Court precedent establishes that the taking of a blood sample or the administration of a breath test is a search. Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016) (citing Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 616–617 (1989); Schmerber v. California, 384 U.S. 757, 767–768 (1966)). Therefore, the warrantless collection of a blood sample, like the one in Petitioner's case, must be reasonable. See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 652 (1995) ("As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'").

Although. "the text of the Fourth Amendment does not specify when a search warrant must be obtained," Kentucky v. King, 563 U.S. 452, 459 (2011), the Supreme Court "has inferred that a warrant must [usually] be secured," id.. "This usual requirement, however, is

subject to a number of exceptions." Birchfield, 136 S. Ct. at 2173. One such exception – for exigent circumstances -- allows a warrantless search when an emergency leaves police insufficient time to seek a warrant. See id. (citing Michigan v. Tyler, 436 U.S. 499, 509 (1978)). The exigent circumstances exception permits, "for instance, the warrantless entry of private property when . . . police fear the imminent destruction of evidence." Birchfiled, 136 S. Ct. 15 2173 (citing King, 563 U.S. at 460.).

In Schmerber v. California, the Supreme Court was confronted by a case in which an officer directed hospital personnel to take a blood sample from a driver he had arrested for impaired driving and who was receiving treatment for car crash injuries. See 384 U.S. at 758. The Court held that drunk driving may present an exigency justifying a warrantless search. The Court concluded that the officer "might reasonably have believed that he was confronted with an emergency" that left no time to seek a warrant because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops." Id. at 770. "On the specific facts of that case, where time had already been lost taking the driver to the hospital and investigating the accident, the Court found no Fourth Amendment violation even though the warrantless blood draw took place over the driver's objection." Birchfield, 136 S. Ct. at 2174 (citing Schmerber, 384 U.S. at 770–772).

The Supreme Court also has held that "the natural dissipation of alcohol from the bloodstream does not always constitute an exigency justifying the warrantless taking of a blood sample." Birchfield, 136 S. Ct. at 2174 (citing Missouri v. McNeely, 569 U.S. 141 (2013), a case in which the State of Missouri was seeking a per se rule that "whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because BAC evidence is inherently evanescent," id. at 151-

7

152). Instead, whether a warrantless blood draw is reasonable requires "a case-specific analysis depending on 'all of the facts and circumstances of the particular case.'" Birchfield, 136 S. Ct. at 2174 (quoting McNeely, 569 U.S. at 151).

In Petitioner's case, the State presented evidence at trial showing that at approximately 3:00 p.m. on February 16, 2012, witnesses observed Petitioner drive across a median and into an oncoming traffic lane, passing cars on his right, before attempting to make an illegal right-hand turn across four lanes of traffic. Entering the intersection at a high rate of speed, he struck the driver's side of a pickup truck making a legal left-hand turn. Petitioner then sped off, crossing into oncoming traffic lanes in the process. The Charlotte Mecklenburg Police Department ("CMPD") officer investigating the crash put out a "be on the look-out" ("BOLO") for a car matching the description of Petitioner's car.

At 3:08 p.m., the Huntersville Police Department received a 911 call reporting a two-vehicle accident on the same road Petitioner was seen taking when he fled the first accident. The CMPD officer, believing the two crashes might be related due to the proximity in time and place (the crashes occurred roughly four miles apart), went to the second crash site, saw that one of the two vehicles matched the description of the car involved in the first accident, and informed the lead investigator at the Huntersville crash of the particulars of the first crash. (Trial Tr. Vol. II 338-373, Resp't's Ex. 15, Doc. No. 6-16.)

After Petitioner and the driver of the other vehicle, a pickup truck, were taken from the Huntersville crash site by ambulance, officers began their investigation of that crash. While photographing Petitioner's car and its contents, the lead investigator discovered a plastic baggy containing what he believed to be drugs. The detective testified he suspected Petitioner may have been impaired at the time of the accident, and he ordered another officer to obtain a blood

8

sample from Petitioner at the hospital. He also discovered evidence indicating Petitioner may have been traveling over one hundred miles per hour when he rear-ended the other vehicle. (Trial Tr. Vol. III at 431-494.)

The officer who went to the hospital testified that he spoke to the driver of that other vehicle, who stated he could not remember anything about the accident; he later died of injuries sustained in the crash. The officer was unable to speak to Petitioner, who was unconscious and in the trauma Intensive Care Unit ("ICU"). Petitioner did not regain consciousness while the officer was at the hospital. A nurse drew Petitioner's blood at the officer's request. (Trial Tr. Vol. III at 559-566, 570-571.) The lead investigator of the Huntersville crash subsequently requested that the blood be tested for the presence of alcohol and cocaine. (Trial Tr. Vol. III at 575.) An expert on toxicology testified that cocaine has a very short half-life, and that within 45 minutes of consumption the body will break down half the amount of cocaine ingested. (Trial Tr. Vol. III at 580.)

"[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber, 384 U.S. at 768. In other words, the questions are: "whether the police were justified in [obtaining a blood sample without a warrant and without Petitioner's consent], and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." Id.

It would not have been unreasonable for the trial court to conclude that the lead investigator of the Huntersville crash had probable cause to believe Petitioner was impaired at the time of the collision. Having spoken with the CMPD officer, the investigator knew Petitioner had been observed speeding and driving in a manner that put his own life and the lives

of others at risk, that he had struck another vehicle while making an illegal turn, and that he had fled the scene of that accident, all just minutes before hitting another vehicle with enough force that both it and his own car left the road and ended up in a ditch some distance away. The investigator also had evidence from Petitioner's car indicating he may have been driving over 100 miles per hour when he rear-ended the second vehicle. Finally, the investigator collected what he believed to be drugs from Petitioner's car, specifically what he believed to be cocaine.

Moreover, the trial court reasonably could have concluded that the investigating officer believed "he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,'" id. at 770 (citation omitted), and that such belief was, itself, reasonable. As noted previously, "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." Id. As testimony at Petitioner's trial revealed, the same is true of cocaine.[2] (Trial Tr. Vol. III at 580.) Additionally, as in Schmerber, time elapsed while Petitioner was transported to the hospital and an investigation was conducted. Notably, Petitioner was transported to the trauma center on the main campus of Carolinas Medical Center in Charlotte, not to a hospital or medical center in nearby Huntersville. Furthermore, the evidence at trial was that the lead investigator instructed his subordinate to obtain a blood sample after he found the cocaine in Petitioner's car. While the investigator did not identify the time at which he made that discovery, the officer at the hospital testified that it was almost 6:00 p.m. when he obtained the blood sample.

---

[2] The investigating officer requested that Petitioner's blood be tested for both substances (Trial Tr. Vol. III at 575), indicating he suspected that even if Petitioner had not ingested cocaine, he, nevertheless, was under the influence of an impairing substance, the most likely being alcohol.

Similarly, the trial court reasonably could have concluded that the test chosen to detect the presence of drugs and to determine Petitioner's blood-alcohol content was a reasonable one. See Schmerber, 384 U.S. at 771. First, Petitioner was in the trauma ICU unit, which meant he was not going to be released to take a timely Breathalyzer test (to test for alcohol). Second, he was unconscious the entire time the officer was at the hospital, so he was unable to provide a urine sample (to test for drugs). Third, because he was unconscious, he would not have experienced fear or pain when the blood was taken.

Finally, the trial court reasonably could have concluded that the test was performed in a reasonable manner. See id. Petitioner's blood was taken by a nurse in a hospital environment according to accepted medical practices. See id.

In sum, the trial court reasonably could have concluded that, based upon the circumstances in the case, a motion to suppress the blood evidence on Fourth Amendment grounds would have been denied. Accordingly, Petitioner has not demonstrated that the court's determination that counsel did not render ineffective assistance in failing to file such a motion "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Therefore, this claim is denied.

### B. DEFECTIVE INDICTMENT CLAIM

Petitioner asserts his indictment for possession of cocaine was fatally flawed because it failed to include an essential element of the offense. (§ 2254 Pet. 6-7; Pet'r's Resp. to Summ. J. 9-10.) Specifically, Plaintiff alleges that N.C. Gen. Stat. § 90-95(a)(3), the statute under which he was indicted and convicted, contains three essential elements: 1) knowingly; 2) possess; and 3) a controlled substance, and that his indictment omitted the "knowingly" element. (Pet'r's

11

Resp. to Summ. J. Mot. 13-14.) Petitioner claims that because the indictment omitted an essential element, the trial court did not have subject matter jurisdiction over the possession charge or jurisdiction to enter judgment against him on the possession charge. (§ 2254 Pet. 6-7.)

The Grand Jury Clause of the Fifth Amendment reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Fifth Amendment requirement of indictment by grand jury has yet to be incorporated against the states, however. See Hartman v. Lee, 283 F.3d 190, 195 n.4 (4th Cir. 2002) ("[T]he Fifth Amendment requirement of indictment by grand jury does not apply to the states). In other words, there is no federal constitutional requirement that a criminal defendant be charged by indictment in the state courts. See id. Therefore, whether omission of the word "knowingly" constitutes a defect in Petitioner's indictment is a matter of state law. See id.

Likewise, subject matter jurisdiction over state criminal offenses is determined by state law, not the United States Constitution. In North Carolina, the Superior Court has "exclusive, original jurisdiction" over all criminal offenses against the laws of North Carolina, "not assigned to the district court division." N.C. Gen. Stat. § 7A—271. As such, whether a defect in an indictment deprives the Superior Court of subject matter jurisdiction over an offense is a matter of state law, not federal constitutional law. See e.g., United States v. Cotton, 535 U.S. 625 (2002) (defective indictments do not deprive federal trial courts of the jurisdiction bestowed upon them by the Constitution or the U.S. Congress);

"[A] federal [habeas] court is limited to deciding whether a conviction [and/or sentence] violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Thus, "[v]ariances and other deficiencies in state court indictments are not

ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). See also, Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006) (noting the Supreme Court has held "that Due Process and the Sixth Amendment require notice that is sufficient to allow a reasonable defendant to prepare for trial" (citations omitted)).

"Felonious possession of a controlled substance has two essential elements. The substance must be possessed, and the substance must be knowingly possessed." State v. Weldon, 333 S.E.2d 701, 702 (N.C. 1985) (quoting State v. Rogers, 231 S.E.2d 919, 922 (N.C. Ct. App. 1977)) (internal quotation omitted). Petitioner's indictment alleged that he "did unlawfully, willfully and feloniously possess a controlled substance, cocaine." (§ 90-95(a)(3) Indict., R. on Appeal 4, Resp't's Ex. 2, Doc. No. 6-3.)

Petitioner has not alleged the indictment provided insufficient notice of the charge against him or that he was unable to prepare a defense against the charge for trial. Cf. State v. Harris, 724 S.E.2d 633, 637–638 (N.C. Ct. App. 2012) (holding that indictment stating the defendant acted "willfully" sufficed to allege the requisite "knowing" element contained in the language of the statute (citing State v. Falkner, 108 S.E. 756, 758 (1921) (holding that the absence of the term "knowingly" from an indictment which stated that the defendant " 'did . . . willfully . . . possess [cocaine] with intent to sell or deliver . . .' " did not render the indictment invalid given that the allegations in the indictment sufficiently tracked the applicable statutory language and that the allegation that the defendant acted "willfully" implied that knowing conduct had occurred))). Instead, his claim is that the allegedly defective indictment deprived the state court of subject matter jurisdiction over his drug possession offense. Because that claim is governed by state

13

law, it is not cognizable on federal habeas review and must be dismissed. See McGuire, 502 U.S. at 67–68.

In his Response to the Motion for Summary Judgment, Petitioner claims for the first time on federal habeas review that counsel was ineffective for failing to challenge the trial court's jurisdiction based on the allegedly defective indictment. (Pet'r's Resp. to Summ. J. Mot. 10.) Petitioner has not moved to amend his § 2254 Petition to raise such a claim, and he may not use his response to the summary judgment motion as a substitute for that process. See Fed. R. Civ. P. 15. Therefore, the Court shall not consider Petitioner's new ineffective assistance of counsel claim.

**C. JURY INSTRUCTION CLAIM**

This claim is related to the preceding indictment claim. Petitioner alleges the trial judge committed "plain error" when he instructed the jury on the elements of N.C. Gen. Stat. § 90-95(a)(3). Specifically, Petitioner alleges the court instructed the jury on a "theory" that Petitioner "knowingly" possessed cocaine, although the "knowingly" element was not alleged in the indictment. (Pet'r's Resp. to Summ. J. Mot. 11.) Liberally construed, the Petition claims the trial court created a fatal variance between the indictment and the offense for which Petitioner was convicted. According to Respondent, Petitioner raised the substance of this claim in his January 9, 2017 MAR, and the trial court denied it on the merits. (Resp't's Supporting. Br. 13.)

A fatal variance occurs "[w]hen . . . the [trial] court, through its instructions to the jury, . . . . broadens the bases for conviction beyond those charged in the indictment," constructively amending the indictment. United States v. Randall, 171 F.3d 195 (4th Cir. 1999) (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)). A constructive amendment is a fatal variance because the indictment is altered "to change the elements of the offense charged, such that the

14

defendant is actually convicted of a crime other than that charged in the indictment" and thus violates the Fifth Amendment. United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991); see United States v. Floresca, 38 F.3d 706, 712-13 (4th Cir. 1994) (en banc). As noted previously, however, while the Fifth Amendment guarantees that an indictment's "charges may not be broadened through amendment except by the grand jury itself," Stirone v. United States, 361 U.S. 212, 215–16 (1960), this right has yet to be incorporated against the states, see Hartman, 283 F.3d at 195 n.4. Therefore, Petitioner's claim is not cognizable under the Fifth Amendment. See id. He may seek habeas relief only on the grounds that the judge's instructions violated the Fourteenth Amendment's "Due Process [Clause] and the Sixth Amendment require [ment of] notice that is sufficient to allow a reasonable defendant to prepare for trial." Stroud, 466 F.3d at 297.

Petitioner does not allege that the trial judge's instruction on "knowingly" resulted in insufficient notice of the crime charged (possession of cocaine under § 90-95(a)(3)) or prejudiced his ability to effectively prepare for trial. Nor does he point to anything in the record indicating confusion over his charge or the elements that the State carried the burden of proving. Cf. Harris, 724 S.E.2d at 637–638 (holding that indictment stating the defendant acted "willfully" sufficed to allege the requisite "knowing" element contained in the language of the statute (citation omitted)).

Accordingly, Petitioner has failed to show that the trial court's ruling on the fatal variance claim raised in the MAR was " 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Donald, 135 S. Ct. at 1376 (quoting Richter, 562 U.S. at 103). As such, this claim shall be denied.

In his Response to the Motion for Summary Judgment, Petitioner claims for the first time on federal habeas review that counsel was ineffective for failing to challenge the trial court's jury instruction on "knowingly." (Pet'r's Resp. to Summ. J. Mot. 11-13.) Petitioner has not moved to amend his § 2254 Petition to raise such a claim, and he may not use his response to the summary judgment motion as a substitute for that process. See Fed. R. Civ. P. 15. Therefore, the Court shall not consider Petitioner's new ineffective assistance of counsel claim.

**D. REMAINING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

In ground four of the Petition, Petitioner claims trial counsel was ineffective for failing to object "to witness testimony that was inaccurate statements [sic] that prejudiced the defendant" and for failing to introduce evidence that would have corroborated Petitioner's testimony. (§ 2254 Pet. 10.) The State asserts the defense of procedural default, arguing that these claims were not fairly raised in the state courts. (Resp't's Support. Br. 15, Doc. No. 6.)

AEDPA requires a petitioner to exhaust his available state remedies before he may pursue habeas relief in federal district court. 28 U.S.C. § 2254(b)(1)(A).[3] That is, he must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "A habeas petitioner satisfies the exhaustion requirement by 'fairly present[ing] his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim.'" Robinson v. Thomas, 855 F.3d 278, 283 (4th Cir. 2017) (quoting Baldwin

---

[3] 28 U.S.C. § 2254(b)(1) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(A) & (B).

v. Reese, 541 U.S. 27, 29 (2004)). "Fair presentation" requires a petitioner to show "that 'both the operative facts and the controlling legal principles [were] presented to the state court.'" Jones v. Sussex I State Prison, 591 F.3d 707, 713 (4th Cir. 2010) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). That means a petitioner must include a reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle him to relief, in his state court proceedings. See Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "[T]he presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." Baker, 220 F.3d at 289 (citing Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam)). Furthermore, the prisoner must present the federal claim to all appropriate state courts, including the highest appellate court established to review such a claim. See O'Sullivan, 526 U.S. at 845.

The Court has reviewed Petitioner's MAR, and nowhere in it does he allege trial counsel was ineffective for failing to object "to witness testimony that was inaccurate statements [sic] that prejudiced the defendant," or failing to introduce evidence that would have corroborated Petitioner's testimony. Because he did not present these issues to the trial court in his MAR, they are unexhausted. Moreover, Petitioner would now be procedurally barred from seeking post-conviction review of either claim in the North Carolina courts. See N.C. Gen. Stat. § 15A-1419(a)(1), (3) (listing as grounds for denying a motion for appropriate relief: (1) Upon a previous motion [for appropriate relief] . . . the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so[;] . . . [and] (3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so."). Accordingly, Petitioner's claims of ineffective assistance of counsel are procedurally defaulted on federal habeas review. See

17

Breard v. Pruett. 134 F.3d 615, 619 (4th Cir. 1998) (A federal habeas petitioner procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991))).

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). In his Response to the Motion for Summary Judgment, Petitioner does not acknowledge the Respondent's assertion that the ineffective assistance of counsel claims are procedurally defaulted. (Pet'r's Resp. to Summ. J. Mot. 14-16.) As such, he puts forward no argument to excuse the default.

Moreover, while in his habeas petition Petitioner asserts that appellate counsel was ineffective for failing to raise certain claims on direct review, he did not raise an ineffective assistance of appellate counsel claim in his MAR. (§ 2255 Pet. 15.) "[A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default . . . ." Martinez v. Ryan, 132 S. Ct. 1309, 1317 (2012). "[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," however, and must "first be raised in state court." Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488–89 (1986)). In other words, "'a claim of ineffective assistance,' . . . must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Carpenter, 529 U.S. at 452 (quoting Carrier, 477 U.S. at 489).

In sum, Petitioner's claims that trial counsel was ineffective for failing to object "to witness testimony that was inaccurate statements [sic] that prejudiced the defendant," and for failing to introduce evidence that would have corroborated Petitioner's testimony (§ 2254 Pet. 10) are procedurally defaulted on federal habeas review. Petitioner has not asserted cause and prejudice or that a fundamental miscarriage of justice will occur to excuse the default. Therefore these claims shall be dismissed. Additionally, to the extent he raises ineffective assistance of appellate counsel claims in his habeas Petition (§ 2254 Pet. 15), those claims are procedurally defaulted for the same reasons – Petitioner failed to fairly present them in the state courts, and they would be procedurally barred if he attempted to do so now.[4] See Breard. 134 F.3d at 619.

### V. CONCLUSION

Petitioner's first, second, and third grounds for relief are not cognizable on federal habeas review. Petitioner's third ground for relief also fails on the merits. Petitioner has not demonstrated that the trial court's rejection of his Fourth Amendment-related ineffective assistance of counsel claim constituted an unreasonable application of clearly established federal law, see § 2254(d)(1), and his other ineffective assistance of counsel claims are procedurally defaulted. Consequently, the Court shall grant Respondent's Summary Judgment Motion and deny and dismiss the Petition for Writ of Habeas Corpus.

**IT IS, THEREFORE, ORDERED** that:

---

[4] All of these claims fail for the additional reason that Petitioner alleges no facts to support them. For example, he does not identify which witness(es) testified inaccurately or how the testimony was inaccurate. He likewise does not describe the corroborating evidence trial counsel should have introduced. Indeed, Petitioner did not testify or present any evidence at trial, so what counsel was expected to corroborate is also a mystery. The same holds true for Petitioner's allegations of ineffective assistance of appellate counsel; he states no facts to support them. In short, with no allegations of fact to review, this Court cannot rule on the merits of Petitioner's ineffective assistance of trial and appellate counsel claims.

1. Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**;

2. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DISMISSED and DENIED**;

3. Petitioner's Motion for Evidentiary Hearing (Doc. No. 9) is **DENIED**; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: June 21, 2018

_____
Frank D. Whitney
Chief United States District Judge